Mary F. Kutil, Appellant, v. Floyd Valley Manufacturing Company et al., Appellees.

April 3, 1928.

R. A. Oliver and W. L. Harding, for appellant.

Jepson, Struble, Anderson & Sifford, for appellees.

DE GRAFF, J.—The record facts disclose that the appellee company is a furniture manufacturing corporation, with its principal place of business at Sioux City, Iowa. The decedent, S. F. Kutil, had been active in the organization of the company, and was one of the members of the board of directors, and president of the corporation, at the time of his death.

The paid-in capital of the corporation was small, and in the year 1925, the business of the company required assistance, both in financial and in production and management matters. In  November, 1925, an agreement was entered into between the company and another corporation, known as the Coomer & Small Company, wherein it was agreed that Coomer and Small should become members of the board of directors of the appellee corporation, and that the Coomer & Small Company should take an active management in the operations of the appellee company, in conjunction with the board of directors of the appellee company, and continue the same until all the obligations of the appellee company to the Coomer & Small Company, then owed or thereafter created, should be fully paid.

The Coomer & Small Company agreed, so far as it was able, to secure credit for the appellee company and render services, from time to time, as should be agreed upon between the parties. The Coomer & Small Company was to receive capital stock of the appellee company in payment for such services, under certain conditions and within certain limitations. Under this reorganization plan of the appellee company, S. F. Kutil, the president, was to devote his time and energy to the sale of the company's products, and act as the sales manager, although it is contended by the appellant that he did not exercise the functions of sales manager. The evidence does show that he personally engaged in the sale of the manufactured products, and performed other acts in the promotion of the company's business.

S. F. Kutil met his death in an automobile collision on or about November 30, 1926, while he was traveling in the state of South Dakota, engaged in the sale of the company's products. It is shown that he had been engaged in making personal sales of such products, both before and after the contract was made with the Coomer & Small Company.

There is nothing in the record that indicates that the struc-

tural organization of the company was changed by reason of the agreement entered into with the Coomer & Small Company. The members of the board of directors were selected by the stockholders, and the election of Mr. Coomer and Mr. Small to the board was by the stockholders of the appellee company. In conjunction with the board of directors, the Coomer & Small Company were to render the services as defined in the contract; and, although the record is silent on the point, it is probable that such services were rendered through Mr. Coomer and Mr. Small in their official positions as members of the board of directors of the appellee company.

S. F. Kutil remained in his official position as president of the corporation. No change in the authority of that position appears to have been made, although it may be said that the greater part of Kutil's time was spent in effecting sales of the company's products. No one ever questioned his authority as president of the corporation, and he carried out the instructions and demands of the board of directors, of which he was a member.

Section 1421, Code of 1924, defines the terms "employer," "employee," and "workman." The definitions are free from ambiguity. There can be no question that the Floyd Valley Manufacturing Company is within the definition of the term "employer." Was Kutil an employee, as defined by statute? May it be said that he was not within the statutory exceptions? Subdivision 3, Section 1421, provides that the following persons shall not be deemed or considered as coming within the scope of the benefits of the Workmen's Compensation Law: (a) Casual employees, as defined; (b) persons engaged in clerical work, as defined; (c) independent contractors; (d) persons holding official position, or standing in the representative capacity of the employer. The legislature has seen fit to grade employees, not only by the work or labor they perform, but also by the positions they may hold. The legislature has said that employees engaged in clerical work only are not within the scope of the law; provided that such clerical work shall not include those who may be subject to the hazards of the business. This exclusion is based upon the work performed. The legislature has further said that a person holding an official position or standing in a representative capacity of the employer shall not come

within the scope of the law, as respecting the compensation benefits provided therein.

There can be no question that the president of a corporation holds an official position in that corporation. The legislature has not qualified, in any manner, its meaning of an official position. The law states in plain English that a person holding an official position shall not be deemed an employee, within the scope of the benefits of the law. A bank president may, under some circumstances, be called upon or be willing to perform the duties of a janitor or night watchman. He still would be holding an official position, no matter what duties he performed; and, if he were injured while performing the duties of a night watchman, he would be without the scope and intent of the law.

S. F. Kutil was, at the moment of his death, holding an official position in the Floyd Valley Manufacturing Company. He was the president of the corporation. This is not denied by anyone.  As president of such corporation, and as the employee of such corporation, he was engaged in selling the company's products. This is not denied. The duties of a salesman could not in any sense affect his official position. At most, he was a president acting as a salesman. He did hold that official position at the time of his death, and he was, therefore, in the excluded class. It might further be said that he was a person, at the time in question, who stood in a representative capacity of the employer. The term "representative capacity" requires no definition, as it means simply a person who stands in the place of the employer, with authority to act for the employer. Such a person, no matter what his duties may be, is, by the express terms of the statute, excluded from the benefits created by the statute.

The determination of the status of S. F. Kutil at the time of his injury and death is the pivotal proposition on this appeal. The trial court ruled correctly; and the judgment entered is—
*Affirmed.*

STEVENS, C. J., and EVANS, MORLING, KINDIG, and WAGNER, JJ., concur.